UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO. 11-235 |
| ANTHONY HAMILTON | SECTION: G |

## ORDER AND REASONS

Before the Court is Defendant Anthony Hamilton's ("Hamilton") "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody."[1] On November 10, 2016, the Court held an evidentiary hearing in this matter.[2] After considering the motion, the memoranda in support, the memoranda in opposition, the record, the evidentiary hearing testimony and the applicable law, the Court will deny the motion.

## I. Background

### A.    Factual Background

On December 9, 2011, Hamilton was charged in a 17-count superseding indictment with three counts of drug-related offenses.[3] On September 13, 2012, Hamilton pleaded guilty to all three of the drug-related counts pending against him in the superseding indictment: Count 1, conspiracy to distribute more than 280 grams of cocaine base or 500 grams of cocaine hydrochloride; Count 2, possession with the intent to distribute a quantity of cocaine base; and Count 12, use of a

---

[1] Rec. Doc. 532.

[2] Rec. Doc. 808.

[3] Rec. Doc. 110.

1

communication facility in furtherance of a drug trafficking crime.[4] Hamilton did not enter into a plea agreement.[5] On December 20, 2012, the Court sentenced Hamilton to 121 months imprisonment as to Counts 1 and 3 and 48 months imprisonment as to Count 12, to be served concurrently.[6] On August 26, 2015, the Court issued an Order reducing Hamilton's sentence to 120 months imprisonment as to Counts 1 and 3 pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 of the Sentencing Guidelines.[7]

**B.** **Procedural Background**

On December 13, 2013, Hamilton filed a timely motion to vacate his sentence.[8] Hamilton raised three issues in his motion: (1) he argued that his defense counsel failed to file a Notice of Appeal;[9] (2) he contended that his plea was invalid because he was sentenced on an incorrect drug quantity;[10] and (3) he asserted that he only had a buyer-seller relationship with supplier Bryan Washington during the charged conspiracy.[11] On February 20, 2014, the Government filed an opposition to Hamilton's motion.[12] On May 15, 2014, with leave of Court, Hamilton filed a

---

[4] Rec. Doc. 268.

[5] Rec. Doc. 477 at 2.

[6] Rec. Doc. 356 at 2.

[7] Rec. Doc. 706.

[8] Rec. Doc. 532.

[9] *Id*. at 15–17.

[10] *Id*. at 18–21.

[11] *Id*. at 22.

[12] Rec. Doc. 561.

"Rebuttal/Traverse to Government's Response."[13] In his reply brief, Hamilton asserted that his counsel was ineffective because she failed to raise the issue of his competency and the fact that he "was receiving Social Security Benefits for his incompetency" during the plea colloquy.[14]

On September 7, 2015, the Court issued an Order setting an evidentiary hearing on Hamilton's motion to vacate his sentence.[15] The Court set the evidentiary hearing because there was a disputed issue of fact regarding whether Hamilton ever asked his attorney to file an appeal on his behalf.[16] The Court noted that it would also allow Hamilton to present evidence regarding his competency at the evidentiary hearing because the issue would affect the Court's analysis of the other issues raised in Hamilton's motion.[17]

On July 17, 2015, the Court appointed a Criminal Justice Act ("CJA") Panel attorney to represent Hamilton at the evidentiary hearing.[18] The evidentiary hearing was continued on several occasions at the request of the parties.[19] On November 10, 2016, the Court held an evidentiary hearing.[20] Robert Foley, Alicia Gilbert, David Clark, Catherine Chavarri, and Anthony Hamilton

---

[13] Rec. Doc. 590.

[14] *Id*. at 3–4.

[15] Rec. Doc. 695.

[16] *Id.* at 10.

[17] *Id.* at 11–12.

[18] Rec. Doc. 699.

[19] Rec. Docs. 702, 718, 726, 731, 774.

[20] Rec. Doc. 807.

testified.[21] On December 12, 2016, Hamilton submitted a post-hearing brief,[22] and on January 11, 2017, the Government filed a post-hearing brief.[23]

## II. Parties' Arguments

### A.   *Hamilton's Motion to Vacate*

On December 13, 2013, Hamilton filed a timely motion to vacate his sentence.[24] First, Hamilton argues that his defense counsel failed to file a Notice of Appeal.[25] Hamilton argues that he advised his counsel to file a notice of appeal after sentencing.[26] He contends that his counsel informed him that he had waived his right to appeal.[27] He asserts that his counsel was ineffective in failing to file a Notice of Appeal.[28] Accordingly, Hamilton urges the Court "to hold his petition in abeyance of a Direct Appeal pending the outcome of [the appeal]."[29] In support of his argument, Hamilton includes an affidavit dated December 12, 2013, where he attests that, "[b]efore my sentencing hearing when counsel came to visit me, I informed [her] that I wanted to file a notice of appeal after sentencing and [she] disregarded my instruction."[30]

---

[21] *Id.*

[22] Rec. Doc. 816.

[23] Rec. Doc. 818.

[24] Rec. Doc. 532.

[25] *Id.* at 15–17.

[26] *Id*. at 15.

[27] *Id*.

[28] *Id*. at 16.

[29] *Id*. at 17.

[30] *Id*. at 24.

Second, Hamilton contends that his plea was invalid because he was sentenced on an incorrect drug quantity.[31] He "attacks the validity of the plea based on the assertion that counsel advised him to plead to an erroneous drug quantity when in fact the elements that constitutd [sic] for a higher mandatory minimum lacked the elements based on the fact he admitted to 150 grams but counsel pled him out to 280 grams."[32] He asserts that "counsel was ineffective for advising him to plea to the drug quantity finding of 280 grams of crack cocaine based on the conspiracy when in fact the only proven fact was that defendant distributed 150 grams of crack cocaine."[33]

Third, Hamilton argues that he only had a buyer-seller relationship with supplier Bryan Washington during the charged conspiracy, and that "[a] conspiracy requires more than just a buyer-seller relationship between the defendant and the other person."[34] He asserts that "co-conspirators must know of the other participants intentions even if the crime alleged facts."[35] He contends that "there was no common goal to commit illegal acts or a meeting of the minds to violate the penal code."[36]

## B.    The Government's Opposition

On February 20, 2014, the Government filed a memorandum in opposition to Hamilton's

---

[31] *Id*. at 18–21.

[32] *Id*. at 18.

[33] *Id*. at 20.

[34] *Id*. at 22 (citing *Maseratti v. United States*, 1 F.3d 330, 336 (5th Cir. 1993); *United States v. White*, 569 F.2d 263, 268 (5th Cir. 1998); *United States v. Zamora*, 661 F.3d 200, 209 (5th Cir. 2011)).

[35] *Id*. (citing *Blumenthal v. United States*, 332 U.S. 539, 556–57 (1947)).

[36] *Id*.

motion.[37] It asserts that Hamilton's arguments are "incorrect as to the facts set forth in the record and his legal citations are inapposite to the specific facts in his case."[38] The Government presents evidence to dispute Hamilton's assertion that he asked his counsel to file an appeal.[39] It cites an affidavit from Hamilton's defense counsel, Catherine Chavarri, which states, "Anthony Hamilton decided that he did not wish for her to file an appeal in his case, and he confirmed his decision in writing."[40] It also cites a document signed by Hamilton on December 20, 2012 ("the appellate election form"), which states: (1) his attorney and the judge fully explained his appeal rights; (2) he understood the appeal rights as explained to him; (3) he did not wish to file any appeal of his sentence and/or conviction.[41] The Government asserts that Hamilton "made an affirmative election, memorialized in a document that he signed and dated, asking that his counsel not pursue an appeal of any kind."[42] Accordingly, it asserts that "there was no ineffective assistance shown because counsel carried through with the express instructions" of Hamilton.[43]

Turning to the second issue, the Government contends that Hamilton "agreed to a factual basis that set forth the facts supporting his plea of guilty and specific drug quantity assessment that he acknowledged was correct at the time of his guilty plea."[44] It argues that Hamilton "was charged with

---

[37] Rec. Doc. 561.

[38] *Id*. at 2.

[39] *Id*.

[40] *Id*. (citing Rec. Doc. 561-1 at 1).

[41] *Id*. (citing Rec. Doc. 561-1 at 2).

[42] *Id*. at 3.

[43] *Id*.

[44] *Id*.

a conspiracy involving 280 or more grams of cocaine base ('crack') and that is what he unambiguously admitted to in his plea hearing."[45] Accordingly, it contends that "[t]he accuracy of the agreed upon drug quantity and drug type is beyond dispute in this case."[46]

Finally, addressing the third issue raised by Hamilton, the Government asserts that Hamilton's argument that he was purely a buyer of the cocaine is specifically refuted by the agreed upon factual basis.[47] It argues that the Government must prove the following to support and sustain a conspiracy conviction: "(1) the existence of an agreement between 2 or more persons; (2) the defendant's knowledge of the agreement and (3) the defendant's voluntary participation in the conspiracy."[48] It contends that "[a]ll of the relevant facts in the plea agreement, the factual basis and the guilty plea colloquy support the facts that the Petitioner was both a buyer and a seller of cocaine and that he was not merely in a 'buyer-seller' relationship with Bryan Washington."[49]

On March 7, 2014, with leave of Court, the Government filed a supplemental opposition, noting that Hamilton did not enter into a plea agreement.[50]

**C.   *Hamilton's Reply Brief***

On May 15, 2014, with leave of Court, Hamilton filed a "Rebuttal/Traverse to Government's

---

[45] *Id*. at 4.

[46] *Id*.

[47] *Id*.

[48] *Id*. at 6 (citing *United States v. Ramirez-Vasquez*, 322 F.3d 868, 880 (5th Cir. 2003); *United States v. Brown*, 29 F.3d 953, 958 (5th Cir 1994); *United States v. Almeida-Biffi*, 825 F2.d 830, 834 (5th Cir. 1987)).

[49] *Id*. at 7.

[50] Rec. Doc. 578 at 1.

Response."[51] Hamilton argues that the appellate election form provided by the Government has the following inconsistencies: "1) the initials on the form are inconsistent; 2) who circled the word 'NOT;' and 3) when was the word 'NOT' circled?"[52] He admits that he initialed next to the line stating that he did not wish to file an appeal, but argues that he did not circle the word "not" on that line.[53] He also argues that he did not initial next to the lines stating: (1) his attorney and the judge fully explained his appeal rights; and (2) he understood the appeal rights as explained to him.[54] He asserts that his case is similar to *United States v. Reinhart* because he has several meritorious appellate issues.[55]

Hamilton also raises a new issue in his response memorandum. He contends that counsel was ineffective because she failed to raise the issue of his competency and the fact that he "was receiving Social Security Benefits for his incompetency" during the plea colloquy.[56] He asserts that his plea and his appeal waiver were not knowing or voluntary.[57] He states, "Counsel was not only ineffective by not only failing to follow Petitioner's instructions in appealing his sentence, but Counsel or someone forged the [appellate election form] document, taking advantage of Petitioner's incompetency by initialing the top two lines after Petitioner had signed and circling the word

---

[51] Rec. Doc. 590.

[52] *Id*. at 3.

[53] *Id*.

[54] *Id*.

[55] *Id*.

[56] *Id*. at 3–4.

[57] *Id*. at 4 (citing *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005)).

"NOT."[58]

Hamilton cites *Alleyne v. United States*, arguing that facts which increase a statutory minimum sentence "must be alleged in the Indictment and proven by a jury beyond a reasonable doubt."[59] He argues that "[t]he increase in Petitioner's drug amounts resulted in an enhanced sentence not reflected by a jury verdict and were not on Petitioner's original Indictment."[60] Hamilton asserts that his due process rights were "seriously violated by not only ineffective assistance of counsel, but by a plea that was clearly invalid based on his competency and the enhancement of drug amounts that were attributable to Petitioner by an invalid plea of guilty."[61] He asserts that he was "advised by Counsel, who took advantage of his incompetency, to plead guilty to 280 grams or more, which amount was never brought to a jury and found beyond a reasonable doubt, nor was on the face of Petitioner's original Indictment."[62]

### D.     Hamilton's Post-Hearing Brief

In his post-hearing brief, Hamilton asserts that based on the arguments and evidence presented during the November 10, 2016 hearing he is entitled to relief.[63] First, Hamilton argues that he has established by a preponderance of the evidence that his counsel, Chavarri, was constitutionally ineffective when she failed to file a Notice of Appeal after Hamilton specifically requested that she

---

[58] *Id.*

[59] *Id.* at 5 (citing 570 U.S. — (2013)).

[60] *Id.* at 7. Both the original Indictment and the Superseding Indictment charge Hamilton with a conspiracy to distribute and to possess with the intent to distribute 280 grams or more of cocaine base. Rec. Doc. 3; Rec. Doc. 110.

[61] Rec. Doc. 590 at 7–8.

[62] *Id.* at 8.

[63] Rec. Doc. 816 at 3.

file one.[64] Hamilton contends that he requested that Chavarri file an appeal on two occasions: (1) prior to sentencing after he was informed of the applicable Sentencing Guideline range; and (2) following his sentencing.[65]

Hamilton points to his hearing testimony, arguing that he unequivocally testified that he instructed Chavarri on two separate occasions that he wanted to appeal his conviction and sentence.[66] Hamilton notes that he also testified that he did not initial the first two lines of the appellate election form provided by Chavarri, and that when he initialed the third line the word "not" was circled.[67]

Hamilton points to the testimony of Robert Foley, an expert in the field of forensic document review, noting that Foley testified that he had determined to his highest level of certainty that Anthony Hamilton did not initial the line on the appellate election form that read "I confirm that my attorney and the judge in my case have fully explained my appeal rights to me."[68] Hamilton notes that Foley also testified that Hamilton did not initial the line that stated "I confirm that I understand my appeal rights as explained to me."[69] Hamilton also notes that Foley testified that there was some "underwriting" present on the third line, and he could not determine who initialed that line which stated "I do not wish to file any appeal."[70] In sum, Hamilton argues that Foley's testimony confirmed that it was "very possible" that Anthony Hamilton initialed the third line, dated and signed the

---

[64] *Id*.

[65] *Id*.

[66] *Id*. at 4–5 (citing Rec. Doc. 817 at 256, 269).

[67] *Id*. at 5 (citing Rec. Doc. 817 at 259, 301).

[68] *Id*. at 6 (citing Rec. Doc. 817 at 26).

[69] *Id*. (citing Rec. Doc. 817 at 27).

[70] *Id*. (citing Rec. Doc. 817 at 29).

document and then someone went back and wrote the initials on the top two lines and wrote over the third line.[71]

Second, Hamilton contends that he has established by a preponderance of the evidence that he was incompetent to enter a guilty plea, did not understand the terms of the plea, and that his plea must be vacated because it was not knowing, voluntary, and intelligent.[72] Hamilton argues that his "particular frailties impacted his competence to stand trial, to waive his constitutional rights and enter a plea of guilty without a plea agreement, and to comprehend the concept of conspiracy, which subjected him to a mandatory minimum based on the amount of crack dealt by the entire conspiracy, rather than the amount which he individually possessed."[73] Moreover, Hamilton asserts that Chavarri's failure to investigate his incompetency and to take steps to remediate his severe cognitive deficits, constituted ineffective assistance of counsel under the circumstances.[74]

Hamilton details events of his childhood, which he argues support his claim that he is incompetent.[75] Specifically, Hamilton points to the following events: (1) Hamilton was given alcohol by his mother to help him sleep beginning at age four;[76] (2) he was diagnosed with a learning disability at age twelve;[77] (3) in elementary school, Hamilton reported olfactory hallucinations, which can be

---

[71] *Id*. at 7 (citing Rec. Doc. 817 at 40, 54).

[72] *Id*.

[73] *Id*.

[74] *Id*.

[75] *Id*. at 9.

[76] *Id*. (citing Gov't. Ex. 10).

[77] *Id*. (citing Rec. Doc. 817 at 74).

indicative of brain injury;[78] (4) he described head injuries as a child;[79] (5) at age twelve Hamilton witnessed his uncle's murder by being dropped off of a bridge into oncoming traffic;[80] (6) following his uncle's murder, Hamilton lost the use of his legs and was unable to walk for weeks;[81] and (7) he dropped out of school in the ninth grade at the age of seventeen.[82] Hamilton notes that he was incarcerated between the ages of fifteen and twenty-eight, where he held the lowest level janitorial jobs.[83] Hamilton notes that in 2010, he was evaluated by the Social Security Administration as having a full scale IQ of 50.[84] He points to the testimony of Dr. Clark, who testified that Hamilton could not function independently in the community and diagnosed Hamilton with mental retardation.[85]

Hamilton notes that Dr. Alicia Gilbert evaluated Anthony Hamilton for his competency to stand trial and for his ability to understand his criminal responsibility at the time of the crime.[86] Hamilton points to Dr. Gilbert's recommendation that because his reading level was so low, attorneys should take extra time with Hamilton, and make sure he understands what he was being advised by asking him to repeat concepts back in his own words,[87] and that Hamilton "will require extensive

---

[78] *Id.* (citing Rec. Doc. 817 at 79).

[79] *Id.* (citing Rec. Doc. 817 at 82).

[80] *Id.* (citing Rec. Doc. 817 at 86).

[81] *Id.* (citing Rec. Doc. 817 at 87).

[82] *Id.* (citing Rec. Doc. 817 at 242).

[83] *Id.* (citing Rec. Doc. 817 at 92).

[84] *Id.* (citing Rec. Doc. 817 at 92, 144).

[85] *Id.* at 9–10 (citing Rec. Doc. 817 at 146, 151).

[86] *Id.* at 10 (citing Rec. Doc. 817 at 64).

[87] *Id.* (citing Rec. Doc. 817 at 101).

explanation of his legal options and the documents he considers signing, especially if his allegations regarding forged signatures and misrepresentation are true."[88] Hamilton also points to Dr. Gilbert's testimony that Hamilton stated that he never got to see his discovery and didn't get to review the phone calls or talk about those things with Chavarri before his case was resolved.[89] Hamilton notes that Chavarri's time sheets, which were introduced at the evidentiary hearing, did not reflect any amount of time spent reviewing Hamilton's prior counsel's file, reviewing any of the Governments discovery, reviewing any recorded phone calls, or reviewing discovery with Hamilton.[90] Moreover, Hamilton points to Chavarri's testimony that she was not aware of his learning issues or that he is unable to read.[91] Hamilton notes that Dr. Gilbert testified that under circumstances in which someone had not spent extra time with Hamilton going over the plea, and where his initials were in fact forged on a paper he did not initial, it is "possible" that Hamilton would not have understood the terms of his plea.[92] Accordingly, Hamilton contends that he has established by preponderance of the evidence that he suffered from severe cognitive impairments, was not shown the discovery in his case, and that documents purporting to establish that he waived his right to appeal were forged.[93] Under these circumstances, Hamilton asserts that he is entitled to relief.[94]

---

[88] *Id*. (citing Rec. Doc. 817 at 105).

[89] *Id*. at 10–11 (citing Rec. Doc. 817 at 127).

[90] *Id*. at 11 (citing Rec. Doc. 817 at 224, 225–26; Gov't Ex. 15).

[91] *Id*. (citing Rec. Doc. 817 at 155–56).

[92] *Id*. (citing Rec. Doc. 817 at 139).

[93] *Id*.

[94] *Id*.

## E.    *The Government's Post-Hearing Brief*

The Government contends that the evidentiary hearing produced substantial and credible evidence to support the conclusion that Hamilton is not entitled to relief.[95] The Government asserts that the hearing revealed that Hamilton repeatedly engaged in manipulation, deception, and false statements in his 2255 petition submissions and testimony.[96]

First, the Government argues that Hamilton's argument that Chavarri failed to file a Notice of Appeal, as allegedly requested by Hamilton, and that Chavarri was ineffective was unsupported by the evidence adduced at the hearing.[97] The Government notes that Hamilton engaged a handwriting expert, Robert Foley, to examine the appellate election form provided to Hamilton by Chavarri.[98] The Government points to Foley's testimony that Hamilton did not initial line three of the form.[99] The Government notes that Foley's testimony directly conflicts with Hamilton's earlier statement in his *pro see* 2255 filing that he did initial line three and sign the form.[100] The Government asserts that Hamilton "cannot credibly on the one hand call an expert witness to testify before this Honorable Court and permit evidence to be presented that the initials on [the appellate election form] question three, were not his, but on the other hand, file a 2255 Petition claiming that Hamilton did initial question three, on the form."[101] Therefore, the Government asserts that Hamilton's argument that the

---

[95] Rec. Doc. 818 at 1.

[96] *Id*.

[97] *Id*. at 9.

[98] *Id*.

[99] *Id*. at 10.

[100] *Id*. (citing Rec. Doc. 590 at 3).

[101] *Id*.

appellate election form was altered is unsupported by the credible evidence.[102]

The Government also points to Chavarri's testimony disputing Hamilton's assertion that she had forged his signature on the appellate election form.[103] The Government notes that Chavarri also testified that Petitioner unequivocally declined to pursue any appeal.[104] Furthermore, the Government points to Hamilton's testimony admitting that he signed line three of the appellate election form.[105] The Government notes that Hamilton also testified that he was in handcuffs when he signed his initials at line three, which could possibly explain why that line looked like it had been written over.[106] Accordingly, the Government contends that "[t]his testimony shows that the need for any hand-writing examination by an expert in this case was completely unnecessary and at worst, the calling of such a witness . . . was an effort to deceive this Court about the true facts in this case."[107]

The Government argues that Hamilton falsely testified that he entered into an illicit agreement with Chavarri to answer untruthfully to this Court during his re-arraignment by simply stating "yes" to "basically" all of the Court's questions and "go with it," regardless of the falsity of his answers.[108] The Government asserts that Hamilton's argument for relief is that "Chavarri is corrupt in her practice of law, suborns perjury before this Court, never prepared the case and was ineffective in each and

---

[102] *Id.*

[103] *Id.* at 11–12 (citing Rec. Doc. 817 at 168–69, 207).

[104] *Id.* at 12 (citing Rec. Doc. 817 at 207).

[105] *Id.* at 13 (citing Rec. Doc. 817 at 264).

[106] *Id.* at 13–14 (citing Rec. Doc. 817 at 258).

[107] *Id.* at 15.

[108] *Id.* at 16.

every aspect of her representation of [Hamilton]."[109] The Government contends that Chavarri's testimony rebuts all of Hamilton's false claims, and the Government argues that Chavarri's testimony should be given great weight.[110] The Government avers that Hamilton's hearing testimony "reveals obvious deception and manipulation of the true state of this case and the facts."[111] The Government argues that the great weight of the evidence contradicts Hamilton's testimony and shows that Chavarri effectively represented Hamilton.[112]

Second, the Government addresses Hamilton's argument that he was incompetent.[113] The Government notes that Hamilton was evaluated for his competency by a Bureau of Prisons forensic and clinical psychologist, Dr. Alicia Gilbert.[114] The Government points to Dr. Gilbert's testimony that Hamilton was competent at the time she evaluated him and that he was aware of right and wrong and understood the consequences of his actions.[115] The Government notes that Dr. Gilbert testified that there was evidence that Hamilton was "malingering" during the testing procedure.[116] Moreover, the Government notes that Dr. David Clark, the expert in psychological mental status evaluations called by Hamilton, could not give an opinion as to whether Hamilton knew right from wrong or

---

[109] *Id*. at 17.

[110] *Id*.

[111] *Id*.

[112] *Id*.

[113] *Id*. at 18.

[114] *Id*.

[115] *Id*. (citing Rec. Doc. 817 at 110).

[116] *Id*. at 19 (citing Rec. Doc. 817 at 117).

could assist in his defense.[117] Therefore, the Government asserts that Dr. Clark provided no meaningful rebuttal to Dr. Gilbert's testimony.[118]

In conclusion, the Government asserts that Hamilton's post-hearing brief "simply 'cherry picks' the facts from the hearing in claiming that he had established beyond a preponderance of the evidence that the defendant requested a Notice of Appeal on two occasions, did not initial a form in which he purported to waive his rights to appeal, and that he was incompetent at the time and could not enter a knowing, willful and knowledgeable plea of guilty."[119] The Government notes that Hamilton's brief fails to discuss the evidence that does not support his position.[120] The Government asserts that the hearing testimony "underscores the fact that [Hamilton] is competent and devious; and that [Hamilton's] testimony cannot be believed."[121] Conversely, the Government asserts that Chavarri provided credible testimony regarding her representation of Hamilton.[122] Therefore, the Government asserts that Hamilton's claims have no merit and his request for relief should be denied.[123]

### III. Law and Analysis

#### A.    Legal Standard

A federal prisoner may move to vacate, set aside, or correct his sentence based on four

---

[117] *Id.* (citing Rec. Doc. 817 at 151–52).

[118] *Id.*

[119] *Id.* at 20.

[120] *Id.* at 21.

[121] *Id.* at 22.

[122] *Id.*

[123] *Id.*

grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack."[124] "The scope of relief under § 2255 is consistent with that of the writ of habeas corpus."[125] Relief under § 2255  "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice."[126]

An evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief,"[127] or the prisoner fails to show any "independent indicia of the likely merit of [his] allegations."[128] The prisoner must establish his claims by a preponderance of the evidence.[129] If the court determines that the prisoner is entitled to relief "[it] shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[130]

**B.    *Did Hamilton Received Ineffective Assistance of Counsel?***

Hamilton raises three ineffective assistance of counsel claims. First, he contends that his

---

[124] 28 U.S.C. § 2255(a); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

[125] *Id*.

[126] *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

[127] 28 U.S.C. § 2255(b).

[128] *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006); *see also United States v. Smith*, 915 F.2d 959, 964 (5th Cir.1990) ("If the record is clearly adequate to dispose of the allegations, the court need inquire no further.").

[129] *Wright v. United States*, 624 F.2d 557, 558 (5th Cir.1980).

[130] 28 U.S.C. § 2255(b).

counsel was ineffective for failing to file a Notice of Appeal.[131] Second, he asserts that his counsel was ineffective in failing to raise the issue of his competency.[132] Finally, Hamilton argues that his counsel preformed ineffectively by advising him to plea to the drug quantity finding of 280 grams of crack cocaine based on the conspiracy when in fact the only proven fact was that defendant distributed 150 grams of crack cocaine."[133]

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.[134] If a court finds that a petitioner fails on either of these two prongs it may dispose of the ineffective assistance claim without addressing the other prong.[135]

To satisfy the deficient performance prong, a petitioner must overcome a strong presumption that the counsel's conduct falls within a wide range of reasonable representation.[136] Petitioner must show that the conduct was so egregious that it failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[137] Courts addressing this prong of the test for ineffective assistance of counsel must consider the reasonableness of counsel's actions in light of all the circumstances.[138]

---

[131] Rec. Doc. 816 at 3–7.

[132] *Id.* at 7–11.

[133] Rec. Doc. 532 at 20.

[134] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

[135] *Id.* at 697.

[136] *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

[137] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).

[138] *See Strickland*, 466 U.S. at 689.

To prevail on the actual prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[139] A reasonable probability is "a probability sufficient to undermine confidence in the outcome."[140] As courts determine whether this prong is satisfied, they must consider "the relative role that the alleged trial errors played in the total context of [the] trial."[141]

The Supreme Court has held that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.[142] To satisfy the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[143]

Considering this standard, the Court will address each of Hamilton's ineffective assistance of counsel claims in turn.

### 1.  Failure to File Notice of Appeal

Hamilton asserts that he has established by a preponderance of the evidence that his counsel was constitutionally ineffective when she failed to file a Notice of Appeal after he specifically requested that she file one.[144] At the evidentiary hearing, Hamilton testified he told Chavarri that he wanted to appeal his sentence on two occasions: (1) prior to his sentencing when Chavarri brought

---

[139] *Id*. at 694.

[140] *Id*.

[141] *Crockett*, 796 F.2d at 793.

[142] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

[143] *Id.* at 59.

[144] Rec. Doc. 816 at 3.

the Presentence Investigation Report to the jail to review with Hamilton;[145] and (2) in Court after his

sentencing hearing.[146] Chavarri testified that Hamilton never instructed her to file a Notice of

Appeal.[147] Based on Chavarri's testimony and the other evidence submitted at the evidentiary hearing,

the Government contends that Hamilton's argument that Chavarri was ineffective in failing to file a

notice of appeal is unsupported by the evidence.[148]

The Supreme Court in *Roe v. Flores-Ortega* noted that an attorney's performance is

ineffective where she fails to file a Notice of Appeal requested by a criminal defendant.[149] When

counsel fails to file a requested appeal, the defendant need not demonstrate that he would have been

able to raise meritorious issues on appeal.[150] However, the Supreme Court rejected a rule that counsel

must file a Notice of Appeal unless the defendant specifically instructs otherwise.[151] "In those cases

where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken

. . . the question whether counsel has performed deficiently by not filing a notice of appeal is best

answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with

the defendant about an appeal."[152] The Supreme Court defined the term "consult" as "advising the

defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort

---

[145] Rec. Doc. 817 at 255–56.

[146] *Id.* at 257.

[147] *Id.* at 160–61.

[148] Rec. Doc. 818 at 9.

[149] 528 U.S. 470, 477 (2000).

[150] *Id.*

[151] *Id*. at 478.

[152] *Id*.

21

to discover the defendant's wishes."[153] "If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance."[154] To show prejudice under these circumstances "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."[155] "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination."[156]

In *United States v. Tapp*, the Fifth Circuit interpreted the Supreme Court's holding in *Flores-Ortega*, noting that:

> *Flores-Ortega* applies even where a defendant has waived his right to direct appeal and collateral review. In such circumstances, if the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver.[157]

As an initial matter, the Court notes that Hamilton called Robert Foley, an expert in the field of forensic document examination, to testify at the evidentiary hearing.[158] Hamilton called Foley for the purpose of establishing that the December 20, 2012 appellate election form was forged.[159] The

---

[153] *Id.*

[154] *Id.*

[155] *Id.* at 484.

[156] *Id.* at 485.

[157] 491 F.3d 263, 266 (5th Cir. 2007) (internal citations omitted).

[158] Rec. Doc. 817 at 9–53.

[159] Rec. Doc. 816 at 5.

appellate election form is a one-page document that Chavarri presented to Hamilton on the date of his sentencing hearing.[160]

Line 1 of the form bears the initials "AH," and states "I CONFIRM that my attorney and the judge in my case have fully explained my appeal rights to me."[161] Foley testified that he examined the appellate election form and a comparative sample of Hamilton's handwriting and determined that line 1 of the appellate election form was not signed by Hamilton.[162] Line 2 of the form also bears the initials "AH," and states "I CONFIRM that I understand my appeal rights as explained to me."[163] Foley testified that line 2 of the appellate election form was not signed by Hamilton.[164] Line 3 of the form is not signed, and states "I WISH TO FILE AN APPEAL OF MY SENTENCE AND/OR CONVICTION."[165] Line 4 of the form bears the initials "AH," and states "I DO NOT WISH TO FILE ANY APPEAL OF MY SENTENCE AND/OR CONVICTION."[166] Foley testified that line 4 of the appellate election form contained underwriting that could not be fully made out and overwriting that appeared to be in the same handwriting as lines 1 and 2.[167] Finally, the appellate election form bears the signature "Anthony Hamilton,"[168] and Foley testified that the signature was consistent with

---

[160] Rec. Doc. 817 at 162–64; Rec. Doc. 561-1 at 2.

[161] *Id.* (emphasis in original).

[162] Rec. Doc. 817 at 26.

[163] Rec. Doc. 561-1 at 2 (emphasis in original).

[164] Rec. Doc. 817 at 27.

[165] Rec. Doc. 561-1 at 2 (emphasis in original).

[166] *Id.* (emphasis in original).

[167] Rec. Doc. 817 at 29–31.

[168] Rec. Doc. 561-1 at 2.

that of Anthony Hamilton's signature.[169]

Hamilton testified that he did not initial the first two lines on the form.[170] However, Hamilton admitted that he initialed line 4, dated, and signed the form.[171] According to Hamilton, he believed the form was a Notice of Appeal.[172] The Court finds this testimony to be self-serving and incredible. Hamilton's testimony that he believed the form was a Notice of Appeal is also contradicted by Chavarri's testimony that she circled the word "NOT" found at line 4 because she wanted to emphasize to Hamilton that he was electing not to file an appeal.[173]

Consistent with *Flores-Ortega*, the Court must first address whether Hamilton has established that he requested that his attorney file a Notice of Appeal. Even accepting as true the testimony regarding the forgery of lines 1 and 2 of the form, Hamilton *admitted* that he signed line 4 of the form which states, "I DO NOT WISH TO FILE ANY APPEAL OF MY SENTENCE AND/OR CONVICTION."[174] Moreover, line 3 of the form, which states "I WISH TO FILE AN APPEAL OF MY SENTENCE AND/OR CONVICTION," is not signed.[175] The only evidence submitted to establish that Hamilton did request an appeal was his own incredible testimony that he asked Chavarri to file an appeal on two occasions: (1) prior to his sentencing when Chavarri brought the Presentence

---

[169] Rec. Doc. 817 at 41–42.

[170] *Id.* at 259, 301.

[171] *Id.* at 259.

[172] *Id.* at 259, 301.

[173] *Id.* at 163.

[174] Rec. Doc. 817 at 259; Rec. Doc. 561-1 at 2 (emphasis in original).

[175] *Id.* (emphasis in original).

Investigation Report to the jail to review with Hamilton;[176] and (2) in Court after his sentencing hearing.[177] Hamilton's testimony was directly contradicted by Chavarri's testimony that Hamilton never instructed her to file a Notice of Appeal and the fact that he admitted to initialing the form line 4 stating that he did not wish to file an appeal.[178] Therefore, the Court concludes that the weight of the evidence shows that Hamilton did not ask Chavarri to file an appeal.

Consistent with *Flores-Ortega*, the Court must next address whether Chavarri consulted with Hamilton about his appeal rights. In decisions predating the Supreme Court's decision in *Flores-Ortega*, the Fifth Circuit held that the Constitution always requires "that the defendant be fully informed of his right to appeal."[179] "This would require that the client be advised not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal."[180]

However, in cases following the Supreme Court's decision in *Flores-Ortega*, the Fifth Circuit has noted that the Constitution does not always require a duty to consult, and courts must determine "whether counsel's failure to consult breached a constitutional duty."[181] "Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are

---

[176] Rec. Doc. 817 at 255–56.

[177] *Id.* at 257.

[178] *Id.* at 160–61.

[179] *Childs v. Collins*, 995 F.2d 67, 69 (5th Cir. 1993)

[180] *Id*.

[181] *United States v. Phang*, 722 F.3d 320, 324 (5th Cir. 2013).

nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[182]

Nowhere in the briefing or affidavits provided by Hamilton does he argue that his attorney failed to consult with him about his right to appeal. During the evidentiary hearing Hamilton did not testify that Chavarri failed to consult with him about his right to appeal. Moreover, during the evidentiary hearing, Chavarri testified that she consulted with Hamilton about his right to appeal after he entered his guilty plea but before sentencing.[183] Chavarri testified that she explained to Hamilton that he had not signed a plea agreement waiving his appeal rights, and so he had the right to appeal his conviction or any sentence imposed.[184] Accordingly, the Court finds that the weight of the evidence establishes that Chavarri consulted with Hamilton about his right to appeal.

Even if Hamilton could establish that his counsel failed to consult with him about his right to appeal, he has not established prejudice. In *United States v. Bejarano*, the Fifth Circuit found that even if the petitioners could establish that their counsel "did not sufficiently consult with them about filing an appeal, and that counsel had a duty to do so," the petitioners could not demonstrate prejudice.[185] The court did not address the deficient performance prong, finding that the record did not support a finding that there was a "reasonable probability" that the petitioners "would have timely appealed but for their counsels' deficient failure to consult."[186] The petitioners relied on two facts to

---

[182] *Id*. (quoting *Flores-Ortega*, 528 U.S. at 480).

[183] Rec. Doc. 817 at 160–61.

[184] *Id.*

[185] 751 F.3d 280, 285–86.

[186] *Id*. at 286.

establish reasonable probability: (1) that they expressed interest to counsel in appealing; and (2) Bejarano's testimony that he would have appealed.[187] The Fifth Circuit noted that the petitioners asked their counsel whether they could appeal, but found that "this fact alone [wa]s not 'proof' that [the petitioner's] would have appealed but for counsels' deficient performance."[188] The Fifth Circuit found the district court's finding that Bejarano's testimony that he would have appealed was "self-serving" and "implausible in light of the other evidence" was not clearly erroneous.[189] Moreover, the Fifth Circuit noted that petitioners waited "almost a full year after sentencing" to file their petitions, which the court noted were "post-sentencing actions that some courts have concluded 'indicate [the defendant] was unlikely to have' timely appealed."[190]

Here, Hamilton first raised the issue of an appeal on December 16, 2013, almost twelve months after his sentencing. Therefore, the Court finds that Hamilton has not established that he would have timely appealed but for Chavarri's alleged deficient failure to consult with him regarding an appeal. Accordingly, the Court finds Hamilton's ineffective assistance of counsel claim regarding Chavarri's failure to file a Notice of Appeal without merit.

### 2.      Failure to Raise the Issue of Hamilton's Competency to Enter Guilty Plea

Hamilton argues that he was not competent to enter a guilty plea, and he did not understand the terms of his plea.[191] Accordingly, Hamilton contends that his attorney's failure to investigate his

---

[187] *Id.*

[188] *Id.*

[189] *Id.* at 287.

[190] *Id.* (citing *Johnson v. United States*, 364 F. App'x 972, 977 (6th Cir. 2010).

[191] Rec. Doc. 816 at 7.

competency was ineffective.[192] The Government contends that the testimony of Dr. Alica Gilbert, the Bureau of Prisons clinical and forensic psychologist who examined Hamilton, shows that Hamilton was competent to plead guilty.[193]

Constitutional due process mandates that an accused person may only be convicted while legally competent.[194] The competency standard for pleading guilty is the same as the competency standard at trial.[195] The Court must determine whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings."[196] "Where the defendant's testimony evidenced his lucidity and competence, and there is a clear inference from the records that the defendant was fully competent," the district may deny § 2255 relief without conducting a hearing.[197]

In *Bouchillon v. Collins*, the Fifth Circuit addressed a claim that trial counsel performed ineffectively in failing to investigate the petitioner's competency to stand trial.[198] In that case, the attorney was on notice that the petitioner suffered from post-traumatic stress disorder ("PTSD"), had been institutionalized, and was on medication.[199] Despite these facts, the attorney allowed the

---

[192] *Id.* at 8–9.

[193] Rec. Doc. 818 at 18.

[194] *Pate v. Robinson*, 383 U.S. 375, 378 (1966).

[195] *Malinauskus v. United States*, 505 F.2d 649, 654 (5th Cir. 1974).

[196] *Dusky v. United States*, 362 U.S. 402 (1960).

[197] *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990).

[198] 907 F.2d 589, 591 (5th Cir. 1990).

[199] *Id.* at 596.

petitioner to enter a guilty plea without investigating whether the petitioner was competent to do so.[200] Based on these facts, the Fifth Circuit held that the attorney's representation was deficient.[201]

In *Simmons v. Epps*, the Fifth Circuit clarified that "*Bouchillon* does not articulate a per se rule that an attorney who fails to investigate the possibility of mental defects or organic brain damage fails the first *Strickland* prong."[202] There, the Fifth Circuit noted that the petitioner had presented no evidence that his counsel was on notice that the petitioner suffered from PTSD or any other mental disorder, had been institutionalized, or was on medication.[203] Accordingly, the Fifth Circuit concluded that "counsel's failure to investigate any mental defects or organic brain damage did not constitute deficient representation."[204]

Here, the transcript of the re-arraignment demonstrates that Hamilton indicated that he understood the proceedings and that he understood the seriousness of his guilty plea.[205] However, Hamilton also indicated that he was previously treated for a "psychological problem."[206] The Court questioned Hamilton about this issue at the re-arraignment, and Hamilton stated that his psychological problem was "[r]elated to the fact of addiction, abusing alcohol, smoking marijuana."[207] Hamilton also stated that he had been treated for these conditions, and that the conditions did not affect his

---

[200] *Id.* at 590–91.

[201] *Id.* at 596.

[202] 381 F. App'x 339, 349 (5th Cir. 2010).

[203] *Id.*

[204] *Id.*

[205] Rec. Doc. 552.

[206] *Id.* at 5.

[207] *Id.*

understanding of the re-arraignment proceeding.[208] Chavarri affirmed that she had no doubt as to Hamilton's competency to plead.[209] Based on the Court's observations of Hamilton and his responses to questions at the re-arraignment, the Court found that Hamilton was competent to plead guilty.[210]

Moreover, after Hamilton filed the instant 2255 motion, the Government filed an unopposed request for a competency exam under 18 U.S.C. §§ 4241 and 4242.[211] The Court granted the motion, and ordered that Hamilton undergo a psychological evaluation.[212] Dr. Alicia Gilbert, the Bureau of Prisons clinical and forensic psychologist who examined Hamilton, testified at the evidentiary hearing.[213] Dr. Gilbert testified that she evaluated Hamilton during April and May of 2016 for his competency to stand trial at that time and for his criminal responsibility at the time of the crime.[214] Dr. Gilbert testified that Hamilton was competent at the time she evaluated him, and that at the time of the offense he was aware of right and wrong and understood the consequences of his actions.[215] Dr. Gilbert also testified that there was evidence that Hamilton was "purposefully selecting the wrong [answers]" on tests, and not putting his best effort forward during the testing procedure.[216] Therefore,

---

[208] *Id.*

[209] *Id.*

[210] *Id.*

[211] Rec. Doc. 735.

[212] Rec. Doc. 737.

[213] Rec. Doc. 817 at 59–140.

[214] *Id.* at 64–65.

[215] *Id*. at 110.

[216] *Id*. at 115–16. Dr. Gilbert affirmed that "people with severe dementia or brain injury have better scores than Anthony Hamilton." *Id.* at 115.

Dr. Gilbert concluded that Hamilton was "malingering" during the testing procedure.[217] Dr. Gilbert noted that she was able to have a fairly intelligent conversation with Hamilton, which was inconsistent with the very low test scores.[218]

Hamilton called Dr. David Clark, an expert in psychology and vocational rehabilitation to testify at the hearing.[219] Dr. Clark testified that he had examined Hamilton on behalf of the Social Security Administration in 2010.[220] Dr. Clark testified that he assessed Hamilton as having a full-scale IQ of 50, which meant that Hamilton could not function independently in the community.[221] However, Dr. Clark testified that he had not tested Hamilton for his competency to stand trial.[222] Dr. Clark could not provide an opinion on whether Hamilton knew right from wrong, nor could he provide an opinion on whether Hamilton can assist in his defense.[223]

The weight of the evidence suggests that Hamilton was competent to enter a guilty plea and could understand the terms of his plea. The Court observed Hamilton at his re-arraignment and found that he was competent to plead guilty. Moreover, Dr. Gilbert examined Hamilton and determined that he was competent at the time she evaluated him, and that at the time of the offense he was aware of right and wrong and understood the consequences of his actions.[224] Dr. Clark provided no meaningful

---

[217] *Id*. at 115, 117.

[218] *Id*. at 121.

[219] *Id*. at 140–42.

[220] *Id*. at 142–44, 147–48.

[221] *Id*. at 144–46.

[222] *Id*. at 149–50.

[223] *Id*. at 151–52.

[224] Rec. Doc. 817 at 110.

rebuttal to Dr. Gilbert's testimony regarding Hamilton's competency to enter a guilty plea because he could not opine on these issues.[225] Therefore, based on all of the evidence presented and its own observations during Court proceedings in this case, the Court concludes that at the time Hamilton entered his guilty plea he had sufficient ability to consult with his lawyer with a reasonable degree of rational understanding and he had a rational as well as factual understanding of the proceedings.[226] Accordingly, Hamilton has not established by a preponderance of the evidence that his plea must be vacated because it was not knowing, voluntary, and intelligent. Furthermore, no evidence was presented to show that Chavarri was on notice that Hamilton had a low IQ or suffered from any other mental disorder, had been institutionalized, or was on medication. Therefore, the Court finds that Chavarri's failure to investigate Hamilton's competency did not constitute deficient representation.[227]

### 3. Chavarri's Advice that Hamilton Plead Guilty to a Conspiracy Involving 280 Grams of Cocaine Base

Hamilton contends that his plea was invalid because he was sentenced on an incorrect drug quantity.[228] He asserts that "counsel was ineffective for advising him to plea to the drug quantity finding of 280 grams of crack cocaine based on the conspiracy when in fact the only proven fact was that defendant distributed 150 grams of crack cocaine."[229] The Government contends that Hamilton "agreed to a factual basis that set forth the facts supporting his plea of guilty and specific drug quantity

---

[225] *Id.* at 151–52.

[226] *Dusky*, 362 U.S. at 402.

[227] *Simmons*, 381 F. App'x at 349.

[228] Rec. Doc. 532 at 18–21.

[229] *Id.* at 20.

assessment that he acknowledged was correct at the time of his guilty plea."[230] It argues that Hamilton "was charged with a conspiracy involving 280 or more grams of cocaine base ('crack') and that is what he unambiguously admitted to in his plea hearing."[231] Accordingly, it contends that "[t]he accuracy of the agreed upon drug quantity and drug type is beyond dispute in this case."[232]

Hamilton pled guilty to Count One of the Superseding Indictment, charging him with conspiracy to distribute and to possess with the intent to distribute 280 grams or more of cocaine base ("crack") and 500 grams or more of cocaine hydrochloride.[233] Hamilton agreed to a factual basis that set forth the facts supporting his plea of guilty and the specific drug quantity assessment.[234] Specifically, the factual basis stated:

### DRUG QUANTITY ASSESSMENT

The undersigned prosecutor, FBI Special Agents, and Task Force Agents assigned to this investigation have done a thorough review of all drug types and quantities provable during the entire course of the conspiracy. The charged offenses involving cocaine (base or hydrochloride) for defendant **ANTHONY HAMILTON**, in this case include a total quantity of at least 280 grams of cocaine base ("crack") but less than 500 grams of cocaine base ("crack"). No cocaine hydrochloride is attributed to defendant **ANTHONY HAMILTON**.[235]

During the re-arraignment, Hamilton acknowledged, under oath, the accuracy of the factual basis.[236] Hamilton confirmed that he was responsible for at least 280 grams of cocaine base but less

---

[230] *Id.*

[231] *Id.* at 4.

[232] *Id.*

[233] Rec. Doc. 110 at 2.

[234] Rec. Doc. 270.

[235] *Id.* at 14.

[236] Rec. Doc. 552 at 28–30.

than 500 grams of cocaine base when he signed the factual basis. Moreover, the Court informed Hamilton that he would face a minimum term of ten years imprisonment and a maximum term of life imprisonment as to Count One.[237] Hamilton was ultimately sentenced to 10 years imprisonment as to Count One.[238] Therefore, the Court finds Hamilton's argument that he was sentenced on an incorrect drug quantity is unsupported by the record because Hamilton signed and confirmed the factual basis showing that he admitted responsibility for the drug quantity.

Moreover, to the extent that Hamilton argues that Chavarri should not have advised him to plead guilty to the 280 gram quantity, this argument is without merit. At the evidentiary hearing, Chavarri testified that although Hamilton was charged with conspiracy to possess with intent to distribute 280 grams of cocaine base, he insisted that he was only accountable for 150 grams.[239] However, Chavarri testified that she explained to Hamilton that the 150 gram quantity was specific to the 60 day wiretap period, and did not include quantities of cocaine base possessed in furtherance of the conspiracy during the rest of the charged conspiracy.[240] Hamilton presents no evidence to support his assertion that the scope of the conspiracy involved only 150 grams of cocaine base. Accordingly, the Court finds that Hamilton has not established that Chavarri performed ineffectively in advising him to plead guilty to a conspiracy involving a quantity of 280 grams of cocaine base.

## C.      Was Hamilton's Role in the Conspiracy Merely that of a Buyer?

Finally, Hamilton argues that he only had a buyer-seller relationship with supplier Bryan

---

[237] *Id.* at 12.

[238] *See* Rec. Doc. 706 (reducing sentence to 120 months as to Count One).

[239] Rec. Doc. 817 at 157.

[240] *Id.*

Washington during the charged conspiracy, and that "[a] conspiracy requires more than just a buyer-seller relationship between the defendant and the other person."[241] In opposition, the Government argues that Hamilton's argument that he was purely a buyer of the cocaine is specifically refuted by the agreed upon factual basis.[242] It contends that "[a]ll of the relevant facts in the plea agreement, the factual basis and the guilty plea colloquy support the facts that the Petitioner was both a buyer and a seller of cocaine and that he was not merely in a 'buyer-seller' relationship with Bryan Washington."[243]

As noted above, Hamilton pled guilty to Count One of the Superseding Indictment, charging him with conspiracy to distribute and to possess with the intent to distribute 280 grams or more of cocaine base ("crack") and 500 grams or more of cocaine hydrochloride, in violation of 28 U.S.C. § 846.[244] To support and sustain a conspiracy conviction under 28 U.S.C. § 846 the Government must prove the following beyond a reasonable doubt: "(1) the existence of an agreement between two or more persons; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy."[245]

In the signed factual basis, Hamilton agreed that on June 8, 2011, law enforcement agents conducted a lawful traffic stop on him and seized approximately seven grams of cocaine base from the possession of his girlfriend, Crystal Brown, who told law enforcement that Hamilton had handed

---

[241] Rec. Doc. 532 at 22.

[242] Rec. Doc. 561 at 4.

[243] *Id*. at 7.

[244] Rec. Doc. 110 at 2.

[245] *United States v. Ramirez-Vasquez*, 322 F.3d 868, 880 (5th Cir. 2003) (citations omitted).

the cocaine base to her.[246] Hamilton also agreed that "this quantity, combined with [his] intercepted Title III telephone calls, established that he possessed this quantity of cocaine base ('crack') with the intent to distribute it to others.[247] The factual basis also details the Title III intercepted calls between Bryan Washington and Hamilton, which demonstrate that the nature of their relationship was such that Hamilton acquired cocaine base from Bryan Washington for the purpose of possessing the cocaine base with the intent to distribute it.[248]

During the re-arraignment, Hamilton acknowledged, under oath, the accuracy of the factual basis.[249] Hamilton confirmed that he engaged in a conspiracy with Bryan Washington to possess cocaine base with the intent to distribute it when he signed the factual basis and acknowledged its accuracy during his re-arraignment. Therefore, the Court finds Hamilton's argument that he only had a buyer-seller relationship with supplier Bryan Washington during the charged conspiracy unsupported by the record because Hamilton signed and confirmed the factual basis showing that he

---

[246] Rec. Doc. 270 at 6–7.

[247] *Id*. at 7.

[248] *Id*. at 10. The factual basis states:

On June 8, 2011, **BRYAN WASHINGTON** placed an outgoing telephone call to **ANTHONY HAMILTON**. During the course of the conversation, **ANTHONY HAMILTON** informed **BRYAN WASHINGTON** that he would be ready to 'holler' at him in about one hour. **ANTHONY HAMILTON** also informed **BRYAN WASHINGTON**, 'that's two dollars ($2) too big brotha,' which meant that he would like to purchase $200 worth of crack cocaine. In a second telephone call placed by **ANTHONY HAMILTON**, **ANTHONY HAMILTON** informed **BRYAN WASHINGTON** that he was ready. Finally, in a third telephone call placed by **ANTHONY HAMILTON**, **ANTHONY HAMILTON** informed **BRYAN WASHINGTON** that he was at the redlight now.

Immediately following the final telephone call, **ANTHONY HAMILTON** and **BRYAN WASHINGTON** were observed by surveillance units meeting at the Advance Auto Parts store located at 7150 Westbank Expressway, Marrero, Louisiana. **ANTHONY HAMILTON** was subsequently stopped by narcotics units from the Jefferson Parish Sheriff's Office and arrested for the possession of approximately seven (7) grams of crack cocaine.

[249] Rec. Doc. 552 at 28–30.

engaged in a conspiracy with Bryan Washington to possess cocaine base with the intent to distribute it.

### IV. Conclusion

Based on the foregoing, the Court concludes that Hamilton has not established that his counsel performed ineffectively by: (1) failing to file a Notice of Appeal; (2) failing to raise the issue of his competency; or (3) advising him to plea to a conspiracy involving a drug quantity of 280 grams of cocaine base. Hamilton also has not established that his role in the conspiracy was merely that of a buyer. Accordingly,

**IT IS HEREBY ORDERED** that Hamilton's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this _24th_ day of March, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

37